FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

00 AUG 15 AM 9:11

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JOHN ERIC ALEXANDER, an incompetent, by his mother and next friend, LINDA ALEXANDER,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF ALABAMA; ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; NORTHWEST ALABAMA MENTAL HEALTH CENTER; and JOHN VAN CAMP, in his individual capacity.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CV 98-BU-2679-J<br><br>**ENTERED**<br>AUG 15 2000 |

## Memorandum Opinion

In this action, Plaintiff John Eric Alexander, an incompetent, brings claims, by his mother and next friend, Linda Alexander, against the State of Alabama ("State"); the Alabama Department of Mental Health and Mental Retardation ("Department") (together sometimes referred to hereinafter as the "State Defendants"); the Northwest Alabama Mental Health Center ("Northwest"); and John Van Camp, Northwest's Director of Retardation Services, in his individual capacity (hereinafter sometimes collectively referred to as "Defendants"). Based upon allegations that while Plaintiff was a client at a group home for the mentally retarded operated by Northwest he was sexually abused by

52

another client. Plaintiff alleges that Defendants are liable pursuant to the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983 ("section 1983"); the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); the Rehabilitation Act of 1973, as amended, 42 U.S.C. § 701 et seq.; and state tort law. The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and over the state claims pursuant to 28 U.S.C. § 1367(a). Now before the Court are motions for summary judgment filed by all Defendants (Doc. Nos. 24 and 25). The parties have filed evidence and briefed their respective positions on those motions, which are now ripe for decision. Also before the Court is a motion filed by Northwest and Van Camp to strike that portion of Plaintiff's response to the motion for summary judgment that allegedly attempts to assert for the first time a state law negligence claim. (Doc. No. 46). The Court concludes that Defendants' motions for summary judgment are due to be GRANTED with respect to all federal claims, and that the remaining state claims are due to be dismissed without prejudice so that Plaintiff might refile them in state court. Because the motion to strike concerns only a potential state law negligence claim over which the Court would not take supplemental jurisdiction in any event, the Court deems that motion to be MOOT.

## I. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the

grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II. BACKGROUND[1]

Plaintiff is considered "profoundly" retarded, meaning that his IQ is under 40. Operating at the lowest level of intellectual functioning, he is capable of very little verbal communication. Although he is now 26 years old, he has a functional age equivalent of a child approximately 1½ to four years old. Northwest is a non-profit corporation formed pursuant to §§ 22-51-2, Ala. Code 1975, and which has contracted with the Department, which is part of the state government,[2] to provide mental health and mental retardation facilities and programs in a five-county area. At all relevant times to this

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[2] See §§ 22-50-1 et seq., Ala. Code 1975.

lawsuit, Plaintiff's parents had placed Plaintiff as a voluntary client[3] at Northwest, which assigned him to reside at one or another of the group homes for the mentally retarded it operated.

At first, Plaintiff resided at Northwest's adolescent home with three other mentally retarded clients. After being there for about a year, he was transferred to another facility operated by Northwest, the Lakewood home ("Lakewood"). There he resided with four other clients, who, while still mentally retarded, were higher functioning than the clients at the adolescent home. One of these other clients was Bruce Ballenger, a then-21-year old male whose retardation was considered to be only in the "mild" range, corresponding to an IQ of between 60 and 70.[4] Prior to being placed with Northwest in 1994, Ballenger had been in the custody of the Alabama Department of Youth Services based on allegations that he had sexually abused his younger siblings. Defendant Van Camp and other Northwest staff members at Lakewood were aware of those allegations when Ballenger was placed at Lakewood, and after arriving at the facility Ballenger received therapy for sexually deviant behavior. Nonetheless, Plaintiff's family was not informed about Ballenger's alleged prior sexual abuse before Plaintiff was transferred to Lakewood.

On July 16, 1996, an incident occurred where Ballenger sexually abused Plaintiff. At 6:00 p.m. that evening, Ballenger accompanied a Lakewood staff member, Alice Beck,

---

[3] While the mentally retarded persons living at the facilities operated by Northwest might be denominated as "patients" or "residents," Van Camp indicated that Northwest calls such persons its "clients," so the Court uses that designation as well.

[4] Van Camp testified that there are four categories of mental retardation, each of which corresponds to a particular IQ range. In increasing severity, those categories are: "mild" (IQ between 60 and 70), "moderate" (IQ between 60 and 50), "severe" (IQ between 50 and 40), and "profound" (IQ under 40). Van Camp also stated that two of the three clients residing with Plaintiff and Ballenger had mental retardation in the "moderate" to "severe" range while the third's retardation was considered "severe."

to her home after she left work. Beck lived two houses away from Lakewood, and she would pay Ballenger to do yardwork for her. When Ballenger would finish, he would walk back to Lakewood through the woods that surrounded the house. At 8:00 p.m., when Ballenger was soon expected to return, Bonnie White, another Lakewood staff member was on duty. At about that time, she saw Plaintiff playing outside with a shopping cart, as he often did, and she called him inside to receive his evening medication. After giving Plaintiff his medicine, White allowed him to go back outside while she turned her attention to administering medication to the three other clients present in the home. About ten minutes later, White went outside to check on Plaintiff, and while she saw his cart parked at the edge of the surrounding woods, she did not see him. She began to walk around the outside of the house calling his name when she noticed that Ballenger's gloves and water bottle were set out by the steps of the house, indicating that he had returned from working in Beck's yard. White proceeded to call both of their names, thinking they were possibly together. Eventually Plaintiff emerged from the woods and resumed pushing his cart. He was followed a few minutes later by Ballenger. Plaintiff did not seem distressed in any way, and White took him inside to give him a bath. When she did, she noticed that his underwear were on backwards and had leaves in them. Upon further examination, she saw that there were also some leaves in Plaintiff's rectum and that his back was red and scratched. Suspecting that Ballenger had sexually abused Plaintiff, White alerted other members of the Lakewood staff. Upon questioning, Ballenger admitted attempting to sodomize Plaintiff that evening and that he had also molested him on three other occasions. Lakewood staff immediately called Plaintiff's parents and informed them of the suspected sexual abuse. Plaintiff was then taken to the hospital, where a physical examination yielded signs of prior anal intercourse.

On June 4, 1998, Plaintiff's mother filed this action on his behalf in the United States District Court for the Middle District of Alabama. In the complaint, Plaintiff

asserts the following causes of action against Defendants: (I) a claim alleging that "defendants' conduct is in violation of the Fourteenth Amendment to the United States Constitution in failing to provide plaintiff with a reasonably safe environment," Complaint at ¶ 16; (II) a claim alleging violations of the ADA, "including, but not limited to 42 U.S.C. § 12132, Complaint at ¶ 18; (III) a claim under the Rehabilitation Act; (IV) a claim under section 1983; (V) a claim under Alabama state law for "wanton failure to train and/or supervise," Complaint at ¶ 25; and (VI) another state law claim styled, "wanton failure to take action, where such wanton failure was in bad faith," id. at ¶ 29. In his prayer for relief, Plaintiff requested: a declaratory judgment holding that the Defendants had violated the Fourteenth Amendment, 42 U.S.C. § 1983, the ADA, the Rehabilitation Act, and state law; a permanent injunction enjoining Defendants from violating those laws in the future; and an award of compensatory, punitive, and/or nominal damages, costs, attorney's fees and expenses. On October 21, 1998, the action was transferred to this Court. See Doc. No. 1. On December 30, 1999, Northwest and Van Camp filed their motion for summary judgment on all claims, while the State Defendants filed their similar motion on January 3, 2000. Those motions are now ripe for decision, after discovery disputes caused a number of delays.

### III. CONTENTIONS & ANALYSIS

#### A. Federal Law Claims

##### 1. The Constitutional and Section 1983 Claims

As a threshold matter, the Court would note that Plaintiff's Complaint appears to assert a claim brought directly under the Fourteenth Amendment (Claim I), and a separate claim brought pursuant to section 1983, asserting that Defendants' conduct was under color of law and operated to deprive Plaintiff of his constitutional rights (Claim IV). While there are limited circumstances in which a person may sue officials directly under the Constitution, see Bivens v. Six Unknown Named Agents of the Federal Bureau of

Narcotics, 403 U.S. 388 (1971), Congress's enactment of section 1983 provides an avenue by which redress may be had against state officials for constitutional violations. See Dean v. Gladney, 621 F.2d 1331, 1336-37 n.14 (5th Cir.1980), cert. denied, 450 U.S. 983 (1981); Hearth, Inc. v. Department of Public Welfare, 617 F.2d 381, 382-83 (5th Cir. 1980).[5] Thus, where section 1983 provides an effective remedy, such generally precludes the implication of a direct action under the Constitution. See Williams v. Bennett, 689 F.2d 1370, 1390 (11th Cir. 1982). There are no allegations in the complaint that could conceivably give rise to a Bivens-type claim. To the extent Plaintiff seeks to assert a claim directly under the Constitution, such a claim is due to be dismissed with prejudice. The Court will consider Plaintiff's constitutional claims, but only in the context of section 1983.

>Section 1983 provides, in relevant part, that
>
>> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to prevail in an action under section 1983, "a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir.1990)).

Plaintiff concedes that Northwest is not a government facility, as originally

---

[5] All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

believed when the complaint was filed, and that it is not liable for violating the Fourteenth Amendment. See Plaintiff's Response to Defendant's Motion for Summary Judgment at 2 n.2. Accordingly, Northwest's motion for summary judgment will be granted with respect to the section 1983 claim against it. The Court concludes that summary judgment is also warranted as to the section 1983 claims against the other Defendants. Indeed, Plaintiff appears to have conceded his constitutional claims with respect to all Defendants, as he fails to respond otherwise to the arguments offered by Defendants on those claims. In any event, it is undisputed that Van Camp is an employee of Northwest rather than of the State or the Department. Once it is conceded that Northwest did not act "under color of law" for purposes of section 1983, then it follows here that neither did its employee, Van Camp. He is therefore entitled to summary judgment on the section 1983 claim against him. The State Defendants are also entitled to summary judgment on the section 1983 claims against them, for at least three reasons. First, the evidence is undisputed that the neither State Defendant has ever owned or operated the Lakewood home. Thus, it cannot be said that either State Defendant deprived Plaintiff of his constitutional rights. Second, neither the State of Alabama nor the Alabama Department of Mental Health and Mental Retardation are considered "persons" within the meaning of section 1983, and thus they are not amenable to suit under that statute. See <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989). And third, the State Defendants enjoy Eleventh Amendment immunity from section 1983 claims brought in federal court. See <u>Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation</u>, 49 F.3d 1490, 1503 (11th Cir. 1995). Therefore, all of the section 1983 claims are due to be dismissed with prejudice.

### 2. ADA and Rehabilitation Act Claims

In his other federal law claims, Plaintiff charges that Defendants discriminated against him based on his disabled status, in violation of Title II of the ADA and section

504 of the Rehabilitation Act ("section 504"). Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 similarly provides in pertinent part as follows: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

"The remedies, procedures and rights" available under Title II of the ADA are the same as those available under section 504. 42 U.S.C. § 12133. In addition, Congress has instructed that interpretation of Title II of the ADA and § 504 be coordinated "to 'prevent[ ] imposition of inconsistent or conflicting standards for the same requirements' under the two statutes." Rogers v. Department of Health, Envtl. Control, 174 F.3d 431, 433 (4th Cir. 1999) (alteration in original) (quoting 42 U.S.C. § 12117(b)). Thus, federal courts have recognized that because the purpose, scope, and governing standards of § 504 and Title II of the ADA are largely the same, cases construing one statute are instructive in construing the other. See, e.g., Doe v. Woodford County Bd. of Educ., 213 F.3d 921, 925 (6th Cir. 2000); Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000); Washington v. Indiana High School Athletic Ass'n, Inc., 181 F.3d 840, 845 n.6 (7th Cir. 1999); Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998).

In order to recover under § 504, Plaintiff must establish (1) that he has a "disability," (2) that he is "otherwise qualified" for the benefit sought, (3) that he was discriminated against "solely by reason of . . . his disability," and (4) that the program or activity in question received federal financial assistance. See Grzan v. Charter Hosp. of Northwest Indiana, 104 F.3d 116, 119 (7th Cir. 1997). See also Jackson v. Veterans

Admin., 22 F.3d 277, 278 (11th Cir. 1994) (setting out the elements of a § 504 claim in the employment context). To show a violation of Title II the plaintiff must establish (1) that he has a disability, (2) the denial of a benefit by a public entity, and (3) that such "denial of benefits, or discrimination was by reason of the plaintiff's disability." See Kornblau v. Dade County, 86 F.3d 193, 194 (11th Cir. 1996). Thus, the principal distinctions between the two statutes are that § 504 requires proof that a plaintiff was discriminated against "solely" because of his disability, while Title II of the ADA fixes liability based on a lesser showing of "but for" causation, see McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1074 (11th Cir. 1996), and while § 504 only applies to programs receiving federal financial assistance, Title II of the ADA applies to all state and local governments and their instrumentalities. See Hainze, 207 F.3d at 799.

Plaintiff appears to concede that the State Defendants and Van Camp are entitled to summary judgment on the ADA and Rehabilitation Act claims against them. The Court agrees. The evidence is undisputed that the State Defendants did not own or operate the Lakewood home where Plaintiff was allegedly subjected to sexual abuse. Thus, they are entitled to summary judgment. It is further unquestioned that Van Camp is merely an employee of Northwest. As such, he cannot be held individually liable under the ADA. See Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir.1996) (holding that the ADA does not provide for individual liability, only for employer liability). Plaintiff's section 504 claim against Van Camp also fails. As noted previously, § 504 only prohibits discrimination on the basis of disability by those "program[s] or activit[ies] receiving Federal financial assistance . . . ." It is undisputed that Northwest receives federal funding. However, "[t]he coverage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement." Grzan, 104 F.3d at 120 (quoting Gallagher v. Croghan Colonial Bank, 89 F.3d 275, 278 (6th Cir. 1996)

(internal quotations omitted). Thus, "[e]mployees of the recipients of federal financial assistance are not in themselves the recipients of such assistance." Grzan, 104 F.3d at 120. There is no question that Van Camp does not himself receive federal financial assistance within the meaning of § 504, so he is not liable pursuant to that statute. See also Pritchard v. Southern Co. Servs., 102 F.3d 1118, 1119 n.7 (11th Cir. 1996), cert. denied, 520 U.S. 1274 (1997) (holding that company officials were not individually liable for disability discrimination under either the ADA or the Rehabilitation Act, citing and apparently extending the holding of Mason v. Stallings, supra, to apply to Rehabilitation Act claims). Accordingly, Defendants' motions for summary judgment are due to be granted with respect to the ADA and Rehabilitation Act claims against the State Defendants and Van Camp.

Defendant Northwest also argues that it is entitled to summary judgment on Plaintiff's ADA and § 504 claims. Plaintiff first claims that Northwest is liable for discrimination on the basis of disability based on Northwest's failure to warn Plaintiff's family about Ballenger's record of alleged sexual abuse prior to Plaintiff's placement at Lakewood. Plaintiff cites no authority indicating that such failure might give rise to liability under the ADA or the Rehabilitation Act. However, even assuming that the nondisclosure of Ballenger's prior sexual history could give rise to a claim under the ADA or § 504 if done because of Plaintiff's disability, there is nothing in the record to dispute Van Camp's assertion that this information was withheld in order to protect Ballenger's client confidentiality. Such is obviously a legitimate concern wholly unrelated to Plaintiff's disabled status. Thus, the decision cannot be said to have been discriminatory. Cf. Severino v. North Fort Myers Fire Control Dist., 935 F.2d 1179, 1183 (11th Cir. 1991) (holding, in the employment context, that the evidence showed a disabled plaintiff was fired over a "dispute arising from his reassignment status and job conduct," which was "a legitimate reason, not based on unlawful discrimination"); Davis v. Francis Howell School

Dist., 104 F.3d 204, 206 (8th Cir. 1997) (affirming the denial of a preliminary injunction where the evidence indicated that the defendant school district refused to administer the student-plaintiff's medication for attention deficit disorder on the basis of concerns about liability and students' health, rather than on the basis of the plaintiff's disability).

Plaintiff also claims that Northwest is liable under the Rehabilitation Act and the ADA for failing to take additional steps to protect Plaintiff from sexual abuse by Ballenger, given Plaintiff's lower level of mental functioning allegedly rendered him more vulnerable to abuse than others at the facility. However, the Court agrees with Northwest that, at their heart, these claims, ostensibly of disability discrimination, are really nothing but allegations that the medical care Northwest provided to Plaintiff was substandard. Federal courts generally have found that claims brought pursuant to Title II of the ADA and § 504 of the Rehabilitation Act are not viable where founded on charges that an injury suffered by the plaintiff resulted from the defendant's malpractice in assessing the particular degree of protection or medical care was required by the plaintiff's disability. See Bowen v. American Hosp. Ass'n, 476 U.S. 610, 645 n.33 (1986) ("The legislative history of the Rehabilitation Act does not support the notion that Congress intended intervention by federal officials into treatment decisions traditionally left by state law to concerned parents and the attending physicians. . . . ."); United States v. University Hospital, State University of New York at Stonybrook, 729 F.2d 144, 156-60 (2nd Cir. 1984) (holding that § 504 was not intended to apply to medical treatment decisions, such as where it is alleged that an infant born with serious birth defects should have received additional treatment because of those very defects); Johnson by Johnson v. Thompson, 971 F.2d 1487, 1494 (10th Cir. 1992) (affirming judgment against plaintiff on § 504 claim based on allegedly inadequate medical treatment of infant with birth defects; "Section 504 proscribes discrimination between the nonhandicapped and the 'otherwise qualified' handicapped. It does not create any absolute substantive right to

treatment"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that because "[t]he ADA does not create a remedy for medical malpractice," the plaintiff, who was a paraplegic, could not recover under Title II of the ADA based on allegations that his condition caused him to fall out of bed and break his leg and that prison officials previously refused his request for guardrails for his bed;"[I]t would be extremely odd to suppose that disabled persons whose disability is treated negligently have a federal malpractice claim by virtue of the [ADA], whereas a sick or injured but not disabled person . . . must be content with the remedy that the state law of medical malpractice provides"); Grzan, supra, 104 F.3d at 120-123 (holding that the plaintiff's claim, that the defendant hospital failed to protect her from sexual abuse by defendant's employee while the plaintiff was in the defendant's care as a psychiatric patient, was essentially one of medical malpractice and, therefore, was not cognizable under § 504); Todd v. Elkins School Dist. No. 10, 149 F.3d 1188 (table), 1998 WL 199636 (8th Cir. 1998) (holding, as a matter of law, that the plaintiff, a fourth grade special education student with muscular dystrophy, could not recover under § 504 based on allegations that he fell from his unbuckled wheelchair and broke his leg while being pushed to the playground by a fellow student); Stauffer v. Orangeville School Dist., 1990 WL 304250, *1 (N.D. Ill. 1990) (finding, in a case very similar to the instant one, no liability under § 504 where the parents of a plaintiff with severe mental retardation alleged that school officials allegedly failed to adequately protect the plaintiff from sexual abuse by another student on a field trip where officials had reason to know the other student previously had been arrested for criminal sexual misconduct).

    Here, Plaintiff couches his argument in terms of "discrimination" by charging that he was denied the "benefit of reasonable protection from sexual abuse, while other clients were so protected." Plaintiff's Response to Defendant's Motion for Summary Judgment at 10. However, such a characterization does not change the fact that Plaintiff's

fundamental complaint is with the quality of care and protection that Northwest afforded him. Plaintiff was, in fact, treated by Northwest. He just complains that they failed to take adequate precautions to protect him from the unlawful acts of a third person. There is no question that Northwest did not intend for Plaintiff or any other client to be a victim of sexual abuse. Indeed, there is no indication that Northwest consciously denied Plaintiff any concrete "benefit" it offered. Northwest's actions and omissions may have allowed Plaintiff to be sexually abused by Ballenger. But if that is so, Plaintiff must be satisfied with the remedies afforded under state law, for neither the ADA nor § 504 of the Rehabilitation Act provide him an avenue of redress. Therefore, Northwest is entitled to summary judgment on Plaintiff's ADA and Rehabilitation Act claims.

### B. State Law Claims

Plaintiff has also alleged a number of claims alleging that Defendants are liable under Alabama tort law. However, federal jurisdiction of these remaining claims was premised upon the court's exercise of supplemental jurisdiction. 28 U.S.C. § 1367(a). Having dismissed the federal claims, the Court no longer has original jurisdiction of any of the surviving claims. Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the state law claims. See Nobles v. Alabama Christian Academy, 917 F.Supp. 786, 789-90 (M.D. Ala. 1996). In doing so, the Court has taken "into account concerns of comity, judicial economy, convenience, fairness, and the like," Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996). These are matters best determined by the courts of the State of Alabama, not by a federal court. Plaintiff's state law claims will be dismissed, but without prejudice, to allow them to be filed in state court. In addition, Northwest and Van Camp have filed a motion to strike a portion of Plaintiff's response to the motion for summary judgment. More particularly, Northwest and Van Camp complain that Plaintiff is attempting therein to state a claim for negligence

that is not included in the complaint. However, because the Court is dismissing all state claims, the Court deems the motion to strike to be moot.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motions for summary judgment (Doc. Nos. 24 & 25) are due to be GRANTED with respect to all federal claims. Thus, Plaintiff's claims brought pursuant to the Fourteenth Amendment, 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act are due to be DISMISSED WITH PREJUDICE, the Court finding no genuine issue of material fact and that the Defendants are entitled to judgment as a matter of law on such claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are due to be DISMISSED WITHOUT PREJUDICE, so that Plaintiff might refile them in state court. The motion to strike filed by Northwest and Van Camp (Doc. No. 46) concerns only a potential state law negligence claim over which the Court would not take supplemental jurisdiction in any event. Therefore, the Court deems that motion to be MOOT.

**DONE** and **ORDERED** this 15th day of August, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE